IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:07-CV-50-D

| | | |
|---|---|---|
| BREEZEWOOD OF WILMINGTON CONDOMINIUMS HOMEOWNERS' ASSOCIATION, INC., | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** |
| AMERISURE MUTUAL INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

Plaintiff Breezewood of Wilmington Condominiums Homeowners' Association, Inc. ("Breezewood CHOA") seeks a declaratory judgment stating that Amerisure Mutual Insurance Company ("Amerisure") had a duty to defend its insured, Quality Built Construction, Inc. ("Quality Built"), in a lawsuit ("the underlying lawsuit") that Breezewood CHOA filed in New Hanover County Superior Court against Quality Built on May 28, 2004. In that lawsuit, Breezewood CHOA alleged numerous claims against Quality Built, including construction negligence and breach of warranty. As the assignee of the rights to the insurance policies that Quality Built purchased from Amerisure, Breezewood CHOA seeks to recover indemnification from Amerisure. Breezewood CHOA also seeks $2,000,000 in damages for breach of contract based on Amerisure's failure to defend Quality Built in the underlying lawsuit. Amerisure filed a counterclaim against Breezewood CHOA and seeks a declaratory judgment stating that Amerisure had no duty to defend Quality Built in the underlying lawsuit and has no duty to indemnify either Quality Built or Breezewood CHOA as assignee. On December 14, 2007, Breezewood CHOA and Amerisure filed cross-motions for summary judgment. As explained below, the court grants Amerisure's motion for summary

judgment and denies Breezewood CHOA's motion for summary judgment.

I.

Breezewood CHOA, a North Carolina not-for-profit corporation, is the homeowners' association for a condominium development in Wilmington, North Carolina. Am. Compl. ¶¶ 1, 5. The development consists of 22 buildings and 344 residential units. See Pl.'s Mem. in Supp. of Pl.'s Mot. for Summ. J. 2 [hereinafter "Pl.'s Mem."]. Breezewood of Wilmington, Inc. ("Breezewood of Wilmington") served as the developer of the condominiums, and Quality Built served as the builder and general contractor. Am. Compl. ¶¶ 6–7. Quality Built maintained declarant control over the homeowners' association until June 2002, at which point it transferred control to the condominium owners. Pl.'s Mem. 2. During and after construction, Quality Built held general and umbrella liability insurance policies providing coverage for up to $2,000,000 with Amerisure. Am. Compl. ¶ 8; Answer & Countercl. Exs. B, C.

On May 28, 2004, Breezewood CHOA filed an action in New Hanover County Superior Court against Breezewood of Wilmington and Quality Built alleging claims of construction negligence, breach of warranty, breach of fiduciary duty, breach of contract, unfair and deceptive trade practices, bad faith, constructive fraud, and common law fraud. See Answer & Countercl. Ex. A (underlying complaint). Breezewood CHOA alleged that Quality Built negligently designed and constructed the condominiums, and improperly managed the homeowners' association while it retained declarant control. See generally id. In April or May 2005, Quality Built notified Amerisure of the underlying lawsuit and filed a property damage claim under the insurance policies for water damage to building components and for the resulting loss of use of the buildings. See Am. Compl. ¶ 11; Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 2–3 [hereinafter "Pl.'s Resp."]. On May 25, 2005, Amerisure denied coverage of Quality Built's property damage claim. Am. Compl. ¶ 12 &

Ex. A (letter dated May 25, 2005 from Amerisure to Quality Built denying coverage). Amerisure stated that the allegations against Quality Built in the underlying complaint did not constitute "property damage" under the insurance policies and that Quality Built failed to report its claim in a timely fashion. See Am. Compl. Ex. A. Despite Amerisure's denial of coverage, Quality Built continued to provide Amerisure information from the underlying lawsuit regarding its property damage claim. Am. Compl. ¶ 13. Quality Built also provided Amerisure its legal argument regarding coverage under the policies. Id. Amerisure did not respond to Quality Built's legal argument and took no further actions (including an investigation) with respect to its possible duty to defend Quality Built in the underlying lawsuit. Id. ¶¶ 14–15.

In connection with the underlying lawsuit, Breezewood CHOA retained R.V. Buric Construction Consultants ("Buric") to investigate the cause and extent of its damages, including significant water damage. Buric prepared a report in which it concluded that "[i]ncomplete and incorrect work from original construction by Quality Built Construction led to the building deficiencies and water damage[]." See Aff. of Ronald E. Wright, P.E. Ex. 3, at 8 (report dated May 26, 2006). The report detailed additional building deficiencies, including installation problems with the cladding system, flashing, and drainage system. Id. at 7–8. On January 9, 2007, Breezewood CHOA, Breezewood of Wilmington, and Quality Built entered a settlement agreement, thereby resolving the underlying lawsuit. See Am. Compl. Ex. B (settlement agreement). Pursuant to the settlement agreement, Breezewood CHOA accepted a $2,000,000 offer of judgment from Breezewood of Wilmington and Quality Built. In addition, Quality Built assigned its rights under the insurance policies with Amerisure to Breezewood CHOA. See id. at 1–2. Breezewood CHOA now seeks to recover from Amerisure.

3

Case 7:07-cv-00050-D   Document 42   Filed 03/31/08   Page 3 of 12

II.

"Questions involving the liability of an insurance company under its policy . . . are a proper subject for a declaratory judgment." Nationwide Mut. Ins. Co. v. Aetna Cas. & Sur. Co., 1 N.C. App. 9, 12, 159 S.E.2d 268, 271 (1968). Summary judgment may be granted in a declaratory judgment proceeding when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(c). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation omitted & emphasis removed). Here, neither party challenges the accuracy or authenticity of the insurance policies or the existence of any relevant material facts. Rather, the parties dispute the meaning of the terms "property damage" and "occurrence" under the insurance policies. Thus, the record does not present a genuine issue as to any material fact, and the court may address the legal issues.

III.

Breezewood CHOA and Amerisure seek a declaratory judgment regarding Amerisure's duty to defend Quality Built in the underlying lawsuit. Breezewood CHOA argues that because Quality Built suffered "property damage" as defined in the insurance policies, Amerisure had a duty to defend Quality Built, and the failure to do so constitutes a breach of contract. Additionally, Breezewood CHOA seeks a declaratory judgment that Amerisure had a duty to indemnify Quality Built (or Breezewood CHOA as assignee) because Quality Built's property damage claim was

4

covered under the insurance policies. Amerisure responds that Quality Built did not suffer "property damage" as defined in the insurance policies and that Amerisure therefore had no duty to defend or to indemnify Quality Built (or Breezewood CHOA as assignee).

Under North Carolina law, "[t]he duty of an insurer to defend its insured is based upon the coverage contracted for in the insurance policy." Wm. C. Vick Constr. Co. v. Pa. Nat'l Mut. Cas. Ins. Co., 52 F. Supp. 2d 569, 578 (E.D.N.C. 1999) (internal quotation omitted), aff'd, 213 F.3d 634 (4th Cir. 2000) (per curiam) (unpublished table decision). To determine whether an insurer's duty to defend arises under North Carolina law, the court employs a "comparison test," wherein it compares the terms of the insurance policy at issue with the allegations in the complaint in the underlying action. Id. "When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." Waste Mgt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). "Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend." Id. "[A]llegations of facts that describe a hybrid of covered and excluded events or pleadings that disclose a mere possibility that the insured is liable . . . suffice to impose a duty to defend upon the insurer." Id. at n.2.

In addition to comparing the allegations in the underlying complaint to the terms of the insurance policy, the court also must examine the facts learned by the insurer from the insured during discovery and the facts discoverable by the insurer through reasonable investigation. See id. at 691–92, 340 S.E.2d at 377–78; Duke Univ. v. St. Paul Fire & Marine Ins. Co., 96 N.C. App. 635, 638, 386 S.E.2d 762, 764 (1990); accord Travelers Indem. Co. v. Miller Bldg. Corp. 97 F. App'x 431, 433 (4th Cir. 2004) (unpublished). Thus, the critical inquiry becomes whether the facts alleged

5

in the underlying complaint, shared with Amerisure during discovery, or discoverable by Amerisure through investigation, triggered coverage under the insurance policies and gave rise to a duty to defend.

A.

Initially, the court examines the terms of the insurance policies. "In North Carolina, the interpretation of an insurance policy provision is a question of law." ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co., 472 F.3d 99, 115 (4th Cir. 2006). As such, "[t]he construction and application of insurance policy provisions to undisputed facts is . . . properly committed to the province of the trial judge for a summary judgment determination." Sitzman v. Gov't Employees Ins. Co., 182 N.C. App. 259, 261–62, 641 S.E.2d 838, 840 (2007) (internal quotation omitted). In construing the terms of the insurance policies, the court applies well-established interpretational rules, recently summarized as:

> If the policy terms are plain, unambiguous, and susceptible of only one reasonable construction, the courts will enforce the contract according to its terms. If the meaning of the terms is uncertain or capable of more than one reasonable interpretation, the doubts will be resolved against the insurance company and in favor of the policyholder. However, ambiguity in the terms of an insurance policy is not established by the mere fact that the plaintiff makes a claim based upon a construction of [the policy's] language which the company asserts is not its meaning.
>
> When the policy contains a definition of a term used in it, this is the meaning which must be given to that term wherever it appears in the policy, unless the context clearly requires otherwise. Absent a definition, nontechnical terms in the policy should be given their ordinary meaning, unless the context otherwise requires. . . .
>
> Insurance provisions which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction. Conversely, exclusionary clauses are not favored and therefore all ambiguous provisions will be construed against the insurer and in favor of the insured.
>
> The burden is on the insured to show that coverage exists for the claimed loss. If the insurer relies on a clause of the policy which excludes coverage, the burden is on the insurer to establish the exclusion.

6

Shea Homes, LLC v. Old Rep. Nat'l Title Ins. Co., No. 3:05cv005, 2007 WL 3334210, at *5 (W.D.N.C. Nov. 5, 2007) (unpublished) (internal quotations and citations omitted; alterations in original).

The insurance policies between Quality Built and Amerisure provide coverage for "property damage" if the property damage is caused by an "occurrence" that takes place within the coverage territory and occurs during the policy period. See Am. Compl. Ex. B; Answer & Countercl. Ex. B at 18, Ex. C at 16. The parties do not dispute that Quality Built sustained the alleged property damage within the coverage territory during the policy period. The insurance policies define "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." Answer & Countercl. Ex. B at 30, Ex. C at 34. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. Ex. B at 29, Ex. C at 33. Together, these requirements create an inference that the "property allegedly damaged has to have been undamaged or uninjured at some previous point in time." Vick Constr., 52 F. Supp. 2d at 582. Allegations of faulty workmanship are inconsistent with this inference, and accordingly, do not constitute "property damage." Travelers Indem., 97 F. App'x at 433–34; Vick Constr., 52 F. Supp. 2d at 582; Prod. Sys., Inc. v. Amerisure Ins. Co., 167 N.C. App. 601, 606–07, 605 S.E.2d 663, 666 (2004); Hobson Constr. Co. v. Great Am. Ins. Co., 71 N.C. App. 586, 590–91, 322 S.E.2d 632, 635 (1984). Moreover, the insurance policies expressly exclude from coverage "that particular part of any property that must be restored, repaired or replaced because '[the insured's] work' was incorrectly performed on it." Answer & Countercl. Ex. B at 21, Ex. C at 20.

7

B.

Turning to the allegations in the underlying complaint, Breezewood CHOA sought recovery from Quality Built for numerous "defects in construction and design" that "direct[ly] and proximate[ly]" caused Breezewood CHOA to incur expenses for "extraordinary repairs and reconstruction." See Answer & Countercl. Ex. A ¶¶ 7–8. The underlying complaint alleges construction negligence and breach of warranty claims (among others), and identifies fourteen specific construction defects, including extensive drainage problems and the lack of flashing around roofs, windows, and doors. Id. ¶¶ 10–17. These allegations coincide with Buric's conclusion that incomplete and incorrect original construction work caused the extensive water damage. Compare id. ¶ 11 with Wright Aff. Ex. 3, at 7–8. Thus, to the extent Breezewood CHOA sought to recover from Quality Built the cost of correcting Quality Built's faulty workmanship, the claims do not fall within the scope of the insurance policies issued by Amerisure because faulty workmanship does not constitute "property damage." See Travelers Indem., 97 F. App'x at 433–34; Vick Constr., 52 F. Supp. 2d at 582; Prod. Sys., 167 N.C. App. at 606–07, 605 S.E.2d at 666; Hobson Constr., 71 N.C. App. at 590–91, 322 S.E.2d at 635.

C.

Breezewood CHOA attempts to avoid the effect of the policy language vis-a-vis the allegations in the underlying lawsuit by suggesting that water damage resulting from Quality Built's faulty workmanship constitutes "property damage." In making this argument, Breezewood CHOA relies on Travelers Indemnity.

In Travelers Indemnity, the Fourth Circuit held that water damage, although caused by faulty workmanship, could constitute property damage under very limited circumstances. In that case, the owner of a hotel supplied carpet outside of the general construction contract to the builder

for installation in the hotel. 97 F. App'x at 434. Over time, the builder's faulty installation of windows, doors, and wall finishes caused extensive water damage to the hotel, including damage to the owner-supplied carpet. Id. The Fourth Circuit distinguished the damage to the owner-supplied carpet from other water damage sustained because the owner-supplied carpet was "separate from the [building], not an undifferentiated component." Id. On appeal from remand, the Fourth Circuit reiterated the limited circumstances under which faulty workmanship could give rise to "property damage." See Travelers Indem. Co. v. Miller Bldg. Corp., 221 F. App'x 265, 268–69 (4th Cir. 2007) (per curiam) (unpublished) ("Thus, the only claims that could fall within the definition of 'property damage,' as we construed North Carolina law, were those that alleged damages to the owner's own property that was separate from the hotel.").

Here, none of Breezewood CHOA's claims against Quality Built in the underlying lawsuit alleged damages to property separate from the condominium buildings or to property provided by a party other than Quality Built. Rather, Breezewood CHOA sought recovery from Quality Built for poor construction and design defects. See Answer & Countercl. Ex. A ¶ 7. Thus, Breezewood CHOA's allegations in the underlying lawsuit do not fall within the Travelers Indemnity exception.

Breezewood CHOA next attempts to classify the damages litigated in the underlying lawsuit as damages caused by separate events or actions other than those taken (or rather, not taken) by Quality Built. Breezewood CHOA argues that it would not have incurred extensive water damage "but for" the existence of wet weather events. See Wright Aff. ¶ 21 ("[T]he damages to the Condominium buildings would not have occurred, or would have been significantly less severe, but for the exposure of the buildings to the rain or other wet weather events, irrespective of any construction issues."). Stated differently, Breezewood CHOA argues that wet weather events were a separate, intervening cause, or a joint yet distinct cause, of the water damage. In support,

9

Breezewood CHOA submits the affidavit of Ronald Wright, a consultant with Buric who investigated alleged damages in connection with the underlying lawsuit.[1] Wright states that the buildings suffered exterior and interior water damage that was "caused by water intrusion relating to one or more weather events" (as opposed to excessive air moisture, or the like). Wright Aff. ¶¶ 15–16. Wright also calculates the amount of damages attributable solely to water damage. See Wright Aff. Ex. 5 (adjusted repair estimate).

Several shortcomings doom Breezewood CHOA's attempt to rely on this evidence. First, much of the evidence is irrelevant to whether Amerisure had a duty to defend Quality Built in the underlying lawsuit. In determining whether an insurer has a duty to defend its insured, the court considers the facts alleged in the underlying complaint, shared with the insurer during discovery, or discoverable by the insurer through reasonable investigation. See Waste Mgt., 315 N.C. at 691–92, 340 S.E.2d at 377–78. Here, in connection with Wright's affidavit, Breezewood CHOA submits an adjusted repair estimate dated June 19, 2007, that lists only those alleged damages "which . . . were caused by and are specifically attributable to exposure to rain events and/or weather occurrences." Wright Aff. ¶ 18 & Ex. 5.[2] Breezewood CHOA and Quality Built settled the underlying lawsuit on January 9, 2007. See Am. Compl. Ex. B. Breezewood CHOA generated this damages evidence

---

[1] The court ignores Wright's testimony to the extent he opines that the damages incurred by Quality Built constitute "property damage" under the insurance policies. See Wright Aff. ¶¶ 20–21. An expert may not proffer opinions regarding the legal effect of an insurance contract. Smith v. Childs, 112 N.C. App. 672, 681, 437 S.E.2d 500, 506–07 (1993) (finding trial court erred in allowing expert to testify regarding unambiguous contract provision); cf. Schneider v. Cont'l Cas. Co., 989 F.2d 728, 731 (4th Cir. 1993) (finding district court erred in considering expert opinions regarding whether exclusion in insurance contract disclaimed coverage).

[2] Wright states that Buric prepared the adjusted repair estimate on June 19, 2007. See Wright Aff. ¶ 18. However, the date reflected on the report is June 2, 2006. See Wright Aff. Ex. 5. The court treats this discrepancy as a typographical error on the face of the adjusted repair estimate and will refer to the adjusted repair estimate as being prepared on June 19, 2007.

after Quality Built settled the underlying lawsuit and with an eye toward the current litigation. This damages evidence was not alleged in the underlying complaint or shared with Amerisure during discovery in the underlying lawsuit. Likewise, this information was not discoverable through reasonable investigation by Amerisure.

Second, the adjusted repair estimate appears to be a categorization of the original damages estimate dated June 2, 2006 that was issued in conjunction with Buric's report dated May 26, 2006. Compare Wright Aff. ¶ 18 & Ex. 5 (adjusted repair estimate dated June 19, 2007) with Wright Aff. ¶ 17 & Ex. 4 (repair estimate dated June 2, 2006) and Wright Aff. Ex. 3 (report dated May 26, 2006). However, Buric did not revise its May 26, 2006 report or issue an addendum that would have otherwise changed its initial conclusions. The adjusted repair estimate should thus be read consistently with Buric's report, which concludes that incomplete and incorrect construction work by Quality Built caused the building deficiencies and water damage. See Wright Aff. Ex. 3, at 8.

Third, in viewing the evidence in a light most favorable to Breezewood CHOA, Breezewood CHOA fails to show the existence of a genuine issue of material fact as to whether a wet weather "occurrence" or "accident" caused the water damage. Breezewood CHOA only states the obvious — i.e., that wet weather can cause water damage. Breezewood CHOA fails to provide evidence regarding a particular wet weather event or "occurrence," pervasive weather conditions during the covered period that created "continuous or repeated exposure" to harmful conditions, or evidence that otherwise shows wet weather was a separate and distinct cause of the water damage. Cf., e.g., Iowa Mut. Ins. Co. v. Fred M. Simmons, Inc., 258 N.C. 69, 78, 128 S.E.2d 19, 25 (1962) (water leaking through tarp during roof repair constituted "occurrence" even though it resulted from contractor's own negligence). In sum, Breezewood CHOA fails to show that wet weather events were a separate, intervening cause, or a joint yet distinct cause, of the water damage.

11

Returning to the court's inquiry regarding whether Amerisure had a duty to defend Quality Built in the underlying lawsuit, Breezewood CHOA's evidence fails to create a genuine issue of material fact. The critical inquiry is whether the facts alleged in the underlying complaint, shared with Amerisure during discovery, or discoverable by Amerisure through reasonable investigation, disclosed even a "mere possibility" that Amerisure was liable under the insurance policies. See Waste Mgt., 315 N.C. at 691 n.2, 340 S.E.2d at 377 n.2. The nature of the underlying lawsuit, as one alleging construction negligence and breach of warranties made in connection with the construction contract, along with the facts shared with Amerisure during the course of discovery did not disclose even the mere possibility that Amerisure was liable under the insurance policies. Nor, given the benefit of hindsight, would Amerisure's contemporaneous investigation have revealed materially different facts. Accordingly, Amerisure did not have a duty to defend Quality Built in the underlying lawsuit. Because Quality Built's property damage claim was not covered under the insurance policies, Amerisure also did not have a duty to indemnify Quality Built and does not have a duty to indemnify Breezewood CHOA as assignee. See Answer & Countercl. Ex. B at 18, Ex. C at 17. In light of these conclusions, the court need not determine whether Quality Built complied with the notice provisions in the insurance policies or whether Amerisure waived its objections to indemnification.

IV.

For the reasons explained above, Amerisure's motion for summary judgment is GRANTED and Breezewood CHOA's motion for summary judgment is DENIED.

SO ORDERED. This 31 day of March 2008.

JAMES C. DEVER III
United States District Judge